ROHRBACH v. THE ÆTNA INSURANCE COMPANY, appellant.

THE SAME v. THE GERMANIA INSURANCE COMPANY, appellant.

*Insurance — insurable interest — husband and wife.*

In an action upon a fire policy it appeared that plaintiff's wife, two days after their marriage, and in consideration of her indebtedness to him before their marriage executed to him this paper: "I do hereby certify that I owe to John Rohrbach the sum of $700, and also $25 for each and every month from July 14, 1863, and for every month he may live with me henceforth without any deduction whatever, which amount shall be a lien upon my property.'

The insured premises were the wife's, and she died before the fire. *Held*, that the wife's debt to the plaintiff was not extinguished by their marriage, but constituted a sufficient equitable consideration for the obligation, and that plaintiff had an insurable interest.

THESE actions were brought upon policies of insurance, respectively, and depend substantially upon the same questions, and the plaintiff and counsel being the same, in both cases, they may be considered together.

One William Brand, residing at Jeffersonville, Sullivan county, was the agent of each of the above defendants, with power to issue policies of insurance to applicants for insurance, and the policies in question only became valid contracts upon their being countersigned by the said agent, in addition to the official signature of the other officers of the company. The policy in each case was of the same date, December, 1869, for the same amounts, to wit, $1,000, and upon the same property; and such insurances were below the actual value of the property. The property was destroyed by fire within the time of the running of policies; was a total loss ; proof of loss was duly made.

The causes were tried at a circuit court, at which the judge directed verdicts for the plaintiff for the amounts insured. Judgments were thereupon entered, and appeals brought from such judgments to this court. All other material facts will be stated in the opinion.

*Niven & Thompson*, for appellant.

*John Chetwood*, for respondent.

P. POTTER, J. The only material difference between the cases (if it is material) is, that in the case against the Germania Fire Insurance Company there was a written application for insurance given in evidence, in the other not. The questions to be decided are questions of law, there being no dispute about the facts. The legal questions raised are :

*First.* Absence of insurable interest.

*Second* False statements in the application and proofs of loss, breaking conditions of policy.

*Third.* Marriage of plaintiff, and consequent extinction of the debt upon which plaintiff rests his insurable interest.

As only the first objection has merit enough to be seriously discussed, I propose to notice them in the inverse order of their presentation.

The plaintiff's interest in the property, whatever it was, was conveyed to him before the death of his wife, by her. She was then under no disability at common law or by statute. The instrument was dated June, 1868, prior to the date of the policies of insurance.

By the statute of 1860 (chap. 90, § 3), it is provided that a married woman possessed of real estate as her separate property may sell and convey such property, and enter into any contract in reference to the same; and, by prior statutes, she may do this as if she was a *feme sole*. *Corn Exchange Ins. Co.* v. *Babcock*, 42 N. Y. 613, etc. There was an equitable consideration passing from the wife to the husband which can be sustained under the authorities. See *Woodworth* v. *Sweet*, 7 Alb. L. J. 409. The contract of transfer of interest, or lien, was not extinguished by the marriage relation. .

2. There is no evidence in the case of any false statement of loss. The defendants gave no notice of such an objection. No defense of this kind was interposed in the answers. In the first case (against the Ætna Co.), there is no statement whatever made by the plaintiff as to ownership in the application for insurance; no application is proved. In the second case (the Germania), the company was fully informed as to the plaintiff's title, and there is nothing in the application in conflict with the terms of the policy. The plaintiff applied to the company, or what is the same, to their agent, who only had the power to act for them. The plaintiff was a German and could not read English, and the defendants, by their agent, made out the application in English, and told him that was the paper, to sign it, and he did so. True this agent swears that he was not a general agent. In one sense this was true, but not in another, so far as his powers were confined to that locality. His agency was not general, that extending to all and to other localities, but for all duties that the company could perform in that locality, the agent possessed general power. Knowledge to that agent was knowledge to the company, his acts were their acts. The plaintiff at the time showed this agent his claim to the property he desired to have insured. This agent swears he examined it fully, and " after examining it," he says, " I drew up the application." There was, therefore, no actual fraud committed by the insured. It is only claimed by legal implication. If any fraud was committed, it

was the fraud of the defendants, who, after having received full knowledge of the condition of the property, and interest.intended to be covered, received the plaintiff's money as premium for insuring just such an interest. I *Rowley* v. *Empire Ins. Co.*, 36 N. Y. 550. To take the plaintiff's money with this knowledge, and to insist that they did not take any risk, is at least a gross moral fraud, and ought to estop them from setting up as a defense, that the application made by themselves ·was a fraud. *Sarsfield* v. *Metropolitan Ins. Co.*, 61 Barb. 482, and cases there cited. If any thing could be found in the policy which might otherwise be held to be ·a warranty on the part of the insured, it might be replied that warranties do not extend to known defects. But there is no conflict between the application, the policy and the facts as proved, though it may be conceded to be the law, that representations made between the parties anterior to the signing the application, cannot be given in evidence to contradict the written statement in the application itself.

3. I.think the decision of this case must depend upon the question, whether the plaintiff had an insurable interest in the buildings insured. This objection was sufficiently taken by the defendant's counsel at the close of the plaintiff's evidence in both cases, on motion to dismiss the complaint, and at the end of the case, on request of the judge to charge the jury. It was conceded and proved that the title to the premises upon which the insured buildings stood, was formerly the estate of Margaretha Hartman, who was the wife of the plaintiff; that at the time of taking the policy, the plaintiff was the sole occupant thereof, using the buildings as a dwelling and saloon; that plaintiff's wife died about July 8th, 1868; that prior to her death, she executed to her husband the following instrument:

JEFFERSONVILLE, *June* 30, 1868.

I do hereby certify that I owe to John Rohrbach the sum of seven hundred dollars; and, also, twenty-five dollars for each and every month from the fourteenth day of July, 1863, and for every month he may live with me henceforth without any deduction whatsoever, which amount shall be a lien on my property.

her<br>
MARGARETHA· ⋈ HARTMAN.<br>
mark.

Witnesses:·
    E. NEWBURGER,
    CHRISTIAN AMORELL.

Rohrbach v. The Ætna Insurance Co.

SULLIVAN COUNTY, *ss:*

On this 31st day of August, 1868, before me personally came E. Newburger and Christian Amorell, subscribing witnesses to the foregoing instrument, to me known, who being by me each duly sworn, did each depose and say that he resided as follows: the said Amorell in the town of Cochecton; the said Newburger in the town of Callicoon, Sullivan county, N. Y. That they each know Margaretha Hartman, the individual described in and who executed the foregoing instrument, and that each was present and saw the said Margaretha Hartman sign and declare the same as and for her act and deed, and that the said Margaretha Hartman acknowledged the execution thereof — whereupon the said E. Newburger and Christian Amorell became the subscribing witnesses thereto.

JOHN C. MALL,<br>*Justice of the Peace.*

The said Margaretha died intestate. Her brother, Henry Ambrust, took out letters of administration ; her personal estate was about $600 ; her debts amounted to $1,300 or $1,400, besides about $2,100 due to her husband, the plaintiff. Previous to their marriage, the plaintiff had been working for his wife, and conducting the business. They were married June 28, 1868; the paper in question was executed two days after the marriage, 30th June, and she died 8th July, 1868, eight days thereafter.

Did this paper, with its evidence of indebtedness to the plaintiff and lien upon the said real estate, create an insurable interest in his favor after her death ?

The defendants were neither defrauded, misled or in ignorance as to the plaintiff's interest. They were expressly informed that the title, by deed, was in the wife of the assured. The application and policy are to be construed together as one paper, and each may be used to explain the other. It is extremely difficult to give an accurate definition of an insurable interest in property which will include every case. Interests of this kind, which different persons may have in the same property, are various and complicated, and yet each may have insurable interests therein. Each case must be judged of by its own peculiar circumstances, though controlled in some respects by some general principle applicable to all cases. Absolute and qualified interests are insurable. So are contingent interests, as mortgages, pledges and liens. If, then, this paper is a

mortgage or a pledge, or if it creates a lien, the plaintiff had an insurable interest. If the paper makes him more than a simple creditor, he had an insurable interest. It has even been held, that a creditor has an insurable interest in the life of his debtor, though it is not certain that the debtor would pay him should he live; yet there is some probability more or less remote, that he would. *Lucena* v. *Craufurd*, 3 Bos. & Pul. 301. Common carriers who are in any way liable for goods have an insurable interest therein. *Chase* v. *Washington Mutual Ins. Co.*, 12 Barb. 595.

. A commission merchant having in his possession the goods of his principal or consignee, deposited with him for sale, has an insurable interest in them, and he may insure them in his own name to the full value of the goods. *De Forest* v. *Fulton Fire Ins Co.*, 1 Hall, 84. See opinion of Ch. J. JONES, at p. 102. He says: "It is well settled, that an insurable interest, in mercantile language, does not necessarily impart an absolute right of property in the thing insured. A special or qualified interest is equally the subject of insurance, and it has often been determined that *each distinct interest* in the same subject may be protected by a separate policy for the parties interested in it." Concurred in by OAKLEY, J. Cited with approbation by SANFORD, J. *Van Natta* v. *Mut. Security Ins. Co.*, 2 Sandf. 495. So too, it has been held, that a party in possession of a dwelling-house, under a contract of purchase, although he has not paid the whole consideration, has an insurable interest therein, and if he applies for insurance, representing the house as his, and it is described in the policy as his dwelling-house, he is not guilty of a misrepresentation or breach of warranty so as to avoid the policy. *Ætna Ins. Co.* v. *Tyler*, 16 Wend. 385; see, also, *McGivney* v. *Phœnix Ins. Co.*, 1 id. 85. A commission merchant, to whom goods were consigned, and who had made advances on them, has an insurable interest in them, not only for his advances, but for his commissions. *Wells* v. *Philadelphia Ins. Co.*, 9 Serg. & Rawle, 103

A mortgagee has an insurable interest in the mortgaged property to the amount of his claim. *Carpenter* v. *Providence, etc., Ins. Co.*, 16 Pet. 495, 501. And a pledge of property against a contingent liability gives an insurable interest in the property to the pledgee. *Russell* v. *Union Ins. Co.*, 4 Dall. 421; Philips on Ins., § 290. A creditor having a lien on property, has an insurable interest to the extent of his lien. Philips on Ins., § 292. So the profit of an inn or a theater, is a sufficient insurable interest. Philips on Ins., §

181. In all cases, as a general rule, where the interest, lien, mortgage or pledge is upon specific property, there is an insurable interest as distinguished from the claim of a general creditor, or even a judgment creditor whose lien is general. *Grevemeyer* v. *Southern Mut. Fire Ins. Co.*, 62 Penn. St. 340 ; *Ruth's Appeal*, 54 id. 173.

Does the instrument in question then, come within the definition of a lien, pledge or mortgage, within the principle established by the above cases ? It can hardly be useful to occupy time to distinguish between these several interests of liens, mortgages and pledges, or to give the special characteristics of each. To bring the case within either, it is seen, is sufficient to uphold the judgments. It was held, in the case of *Seymour and Brown* v. *The Canandaigua and Niagara Falls R. R. Co.*, 25 Barb. 284, that an agreement for a lien is a lien in equity, when it is clear that it was the intention of the parties to give or create such lien, and it will be preferred to the claims of subsequent judgment creditors. The omission in the agreement, to specify the particular property in the case at bar, is perhaps an objection that might be raised as between conflicting creditors, but is not a legal objection to its creating an insurable interest as between the parties in this action. The defendants are not in a position to raise that question. The instrument is one that could have been enforced in equity against the estate in question. It is the especial province of a court of equity, to relieve against technical defects and imperfections in the mere form of contracts, if, in good conscience, according to the real intention of the parties, they ought to be performed, and what ought to be done, it is a maxim of that court to regard as done. In that court, upon such an instrument, the plaintiff could have obtained a decree, that the indebtedness to him, specified in that instrument, be made a specific lien on the estate in question. The defendants, by their agent, fully examined this paper before the issuing of the policy; they knew to what specific real estate it applied, and they, as well or better than the plaintiff, knew the legal and equitable character and effect of the instrument in question. As was said in the case of *Herkimer* v *Rice*, 27 N. Y. 163, the law does not require that the assured should have an estate or property in the subject of the insurance. It is sufficient that he have a direct pecuniary interest in its preservation." In this case the plaintiff was a creditor. Before the execution of this paper he had no interest in the real estate technically,

but still in a pecuniary sense he had an interest in its preservation There was insufficient personal estate to pay his demand. The principal value of the real estate consisted in the insured buildings If these could not be insured by him, he would be deprived of protecting himself. He took the lien and took the insurance. The defendants examined the instrument, exercised their judgment upon its legal effect, assumed that he held an insurable interest, took the premium and took the risk. It was held in *Lyon* v. *Richmond*, 2 Johns. Ch. 51, that the courts will not relieve parties from their acts and deeds fairly done, on a full knowledge of the facts, though under a mistake of the law. Every person is charged at his peril with a knowledge of the law. I am of opinion that the plaintiff had an insurable interest in the property covered by the policies, and that the law as well as good faith requires an affirmance of the judgments with costs.

MILLER, P. J., and PARKER, J., concurred.

*Judgments affirmed with costs.*